UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YOON SIK MOON,

       Plaintiff,

                                           MEMORANDUM & ORDER
  v.                                         04-CV-1839 (NGG) (LB)

DANIEL LEE, TOTAL COMPANIES, LLC,
and JOHN DOE,

       Defendants.
------------------------------------------------------------X
GARAUFIS, United States District Judge.

In this diversity action, Yoon Sik Moon ("Plaintiff"), proceeding pro se, has brought suit against Daniel Lee of Deco New York, Inc. ("Deco"), Total Companies, LLC ("Total"), and a John Doe defendant. The Plaintiff seeks to recover a real estate brokerage commission for property sold to Deco through Total, a transaction for which the Plaintiff contends he acted as the agent. At this time, the court considers Total's motion for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Total argues that there is no evidence that a real estate brokerage contract was ever formed between the Plaintiff and Total and that, even if there was such a contract, there is no evidence that the Plaintiff was the procuring cause for the sale of the property. The Plaintiff did not respond to Total's motion.

**I.    Background**

Because the Plaintiff did not respond to Total's motion, he has offered no version of the facts to contradict those presented by Total. The court, therefore, has before it only the facts offered by Total in support of its motion. Despite having to rely on the moving party to establish the relevant facts, they must still be viewed in the light most favorable to the Plaintiff as the non-

1

moving party. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). These facts are as follows.

In the summer of 1990, Korea First Bank ("KFB") made a loan of $9.2 million to 78-14 Roosevelt, Inc. ("Roosevelt, Inc."), a New York corporation, to facilitate its purchase of property located at 78-14 Roosevelt Avenue (the "Property"). (Park Decl. ¶ 2.) KFB secured its loan through a mortgage on the Property from Roosevelt, Inc. (Id.)

In the early 1990s, Roosevelt, Inc. defaulted on the loan. (Id. at ¶ 3.) KFB therefore commenced a foreclosure action and obtained default judgments against Roosevelt, Inc. and a number of its guarantors. (Id.) Thereafter, KFB transferred all of its rights, title, and interest in the mortgage and related loan documents to the Korean Asset Mortgage Corporation ("KAMCO"), an agency that resolves non-performing loans. (Id. at ¶ 4.)

Through an agreement reached with KAMCO, Arthur Anderson Korea Co. Ltd. ("AAK") had the exclusive right to dispose of a portfolio of KAMCO's non-performing loans, including the one made to Roosevelt, Inc. (Id. at ¶ 5.) As a subservicer to AAK, Total had the exclusive right to dispose of the loan on the Property. (Id.)

On or about October 1, 2001, KAMCO, Roosevelt, Inc. and its guarantors entered into a settlement transaction. (Id. at ¶ 6.) As part of the transaction, the claims against Roosevelt, Inc. and its guarantors were settled, Deco's designee acquired the mortgage on the Property from KAMCO, and Roosevelt Avenue Corporation acquired title to the Property from Roosevelt, Inc. (Id. at ¶¶ 6, 8.)

There is nothing in the Plaintiff's complaint to suggest that he would dispute the facts of the case up to this point. What the Plaintiff would dispute, however, is the manner in which the transaction described above came about. In his complaint, the Plaintiff contends that he is due a

five percent real estate brokerage commission from the October 2001 sale of the Property because he informed Daniel Lee, Deco's principal, of the building's existence. (Pl. Compl. at 1.) In a deposition taken by Total's counsel, the Plaintiff explained that a contract arose for him to act as an agent in the sale when he had a conversation with a KAMCO employee, "Mr. Baik." Baik allegedly told the Plaintiff to "bring [an] offer" for the sale of the Property. (Moon Depo. at 59-61.) According to the Plaintiff, Baik agreed, in addition, to pay the Plaintiff a five percent brokerage commission for the sale of the Property. (Id. at 59-61, 63.)

A far different accounting of the Plaintiff's involvement in the transaction arises from Total's submissions in support of its motion. Joseph Park, Total's Vice President, indicates that he personally initiated the transaction in question by contacting Daniel Lee directly. (Park Decl. at ¶ 7.) Park knew Lee because Lee had been involved in an unrelated transaction with Total several years earlier. (Id.) Park and Lee then negotiated the terms of the sale. (Id.) According to Park, at no time did the Plaintiff play any role in introducing the buyer, Roosevelt Avenue Corporation, to Total, or in negotiating or consummating the transaction. (Id. at ¶ 9.) Park's first interaction with the Plaintiff came when he received numerous unsolicited phone calls from him at around the time that the sale was being completed. (Id. at ¶ 11.)

## II. Summary Judgment Standard

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and all reasonable inferences and

ambiguities must be resolved against the non-moving party.  Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2nd Cir. 2001).

The court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Certain evidence is incapable of defeating a motion for summary judgment.  For instance, "[a] plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint." See Contemporary Mission, Inc. v. United States Postal Serv., 648 F.2d 97, 107 (2d Cir. 1981); see also Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

Where a non-moving party has failed to respond to a motion for summary judgment, a court must nonetheless apply the same standard as if the motion had been opposed. Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001); Vermont Teddy Bear, 373 F.3d at 244 ("[W]e hold that the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment.  Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.")  Further, a district court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." Id.

That the Plaintiff is proceeding pro se does not excuse his failure to respond to Total's motion.  So long as a pro se litigant has received adequate notice concerning the consequences of a failure to file an opposition, summary judgment, if appropriate, may be granted.  See Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).  Here, Magistrate Judge Bloom issued a January 27, 2005 Order that clearly articulated the date by which the Plaintiff had to file his brief

opposing Total's motion for summary judgment and the consequences of failing to provide such an opposition. In addition, Total included in its moving papers a notice informing the Plaintiff that "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION. . . ." These two documents provided the Plaintiff with adequate notice regarding the possibility that his claim might be dismissed. I turn, therefore, to the merits of the case.

## III. Discussion

### A. Whether a Contract Existed

Total contends that the Plaintiff cannot maintain an action for a brokerage commission because there is no evidence that a contract giving rise to such a commission existed. Total finds support for its position in the fact that the Plaintiff admits that he had no agreement with any representative of Total for the payment of a brokerage commission and because he can offer no admissible evidence that an agreement existed with any party.

Under New York law, a plaintiff seeking a real estate brokerage commission must prove that he has a contract with the party to be charged with paying the commission. Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 402 (2d Cir. 2001). Such a contract need not be in writing to be effective. Lane-Real Estate Dep't Store, Inc. v. Lawlet Corp., 28 N.Y.2d 36, 44 (1971). There may be an effective oral contract where the commissioning party accepts the broker's services and understands that, in return for those services, the broker expects compensation. See Praedia Realty Corp. v. Durst, 650 N.Y.S.2d 739, 740 (2d Dep't 1996) (finding no implied brokerage contract in part because "the plaintiff failed to show that [the buyer] accepted the plaintiff's services upon the understanding that the latter expected compensation from [the buyer]."); Lane-Real Estate, 28 N.Y.2d at 44 (denying summary judgment because there was

5

evidence that the broker and commissioning party had agreed upon the terms of an oral contract and the amount to be paid under it).

In this case, the Plaintiff's claim appears to be that he entered into an oral contract during a conversation he had with Baik, the KAMCO employee. (See Moon Depo. 59-61, 63.) In a deposition taken by Total, the Plaintiff stated that Baik told him to "bring [an] offer" for the Property and that they agreed to a five percent brokerage commission on the sale. (Id. at 59-61, 63.) But, in the same deposition, the Plaintiff also directly acknowledged that he had no agreement with Total because the only agreement he formed relating to the property was with Baik. (Moon Depo. at 79.) As a result, it is clear that there is no triable issue of fact concerning whether the Plaintiff entered into an agreement with Total.

Putting aside the Plaintiff's admitted lack of an agreement with Total, even assuming arguendo that his agreement with Baik, who was presumably acting on behalf of KAMCO alone, could somehow bind Total, his contention that an agreement was formed is insufficient to raise a triable issue of fact. The only support in the record for the Plaintiff's position that he formed an agreement with Baik are the Plaintiff's statements to that effect in the deposition taken by Total's counsel. But these statements are inadmissible hearsay and, therefore, cannot defeat a motion for summary judgment. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (plaintiff's "statement as to what he 'was told' was hearsay that would not be admissible at a trial" and therefore could not be considered on summary judgment); Medina v. New York City Dep't of Parks & Rec., No. 01 Civ. 7847, 2002 WL 31812681, at *5 (S.D.N.Y. Dec. 12, 2002) (same, citing Sarno).

Consequently, summary judgment for Total is appropriate.

6

### B. Whether the Plaintiff was the Procuring Cause

Total further argues that even if there was a contract for a real estate brokerage commission, the Plaintiff cannot, as a matter of law, support his claim, because the Plaintiff was not the procuring cause for the transaction. In support of its position, Total is once again able to offer the Plaintiff's own admission to undermine his claim. Moreover, Total offers evidence that Joseph Park, its Vice President, was the actual procuring cause, since Park, not the Plaintiff, initiated and consummated the transaction.

Under New York law, a plaintiff seeking a real estate brokerage commission must prove that he was the procuring cause of the transaction. Fieger, 251 F.3d at 402. A broker does not, absent a special agreement, become a procuring cause simply by alerting the ultimate purchaser of an available piece of property. Greene v. Hellman, 51 N.Y.2d 197, 206 (1980). A broker must be "a direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction and the consummation" of the transaction. Id. To be a procuring cause, a broker must at least show "that he created an amicable atmosphere in which the negotiations went forward or that he generated a chain of circumstances which proximately led to the sale." Buck v. Cimino, 663 N.Y.S.2d 635, 637 (2d Dep't 1997).

The Plaintiff alleges that the Property was sold because of the information that he provided to Daniel Lee at Deco. (Pl. Compl. at 1.) But because the Plaintiff failed to respond to Total's motion, there is nothing in the record to support this contention. Instead, the record indicates that the Plaintiff admitted that he never even brought an offer to Baik. Thus, even assuming arguendo that a contract existed between the Plaintiff and KAMCO, the Plaintiff clearly failed to live up to its terms and would not be entitled to a commission under it.

7

Total, by contrast, has provided a sworn declaration that specifically rebuts the Plaintiff's allegations. Park, who negotiated the transaction for Total, indicated that the Plaintiff had no part in initiating, negotiating, or consummating the transaction. (Park Decl. at ¶ 7.) Instead, Park indicated that he had contacted the parties to initiate the deal, and that he had consummated the transaction through his personal negotiations. (Id. at ¶ 9.) In the absence of any triable issues of fact raised by the Plaintiff to challenge this characterization of events, summary judgment is appropriate.

**IV.   Conclusion**

For the foregoing reasons, Total's motion for summary judgment is GRANTED.

SO ORDERED.

Dated: June 14, 2005  /s/ Nicholas Garaufis
      Brooklyn, NY  NICHOLAS G. GARAUFIS
                               United States District Judge